FRIEDLANDER *v*. SIMS.

(Division A. Feb. 12, 1934. Suggestion of Error Overruled March 12, 1934.)

[152 So. 652. No. 31020.]

**Stone & Stone,** for Coffeeville, for appellant.

**S. C. Mims, Jr.,** of Grenada, for appellee.

Argued orally by **W. I. Stone,** for appellant.

**Smith, C. J.,** delivered the opinion of the court.

This is an action of replevin by Friedlander against Sims to recover the possession of two mules and a disc harrow. At the close of the evidence the court below directed the jury to return a verdict for Friedlander for one of the mules, submitted his right to the possession of the other mule and the harrow to the jury, which returned a verdict awarding Friedlander the possession of the

harrow and the mule, being directed by the court so to do, and awarding Sims the other mule. Both of the parties appealed, Friedlander by direct appeal, and Sims by cross-appeal.

Both of the mules and the harrow were claimed by Sims under alleged contracts with Friedlander; one mule and the harrow under one contract, and the other mule under a separate and distinct contract. Sims was a farm tenant of Friedlander under a lease executed in January, 1929, for the years 1929 to 1933, inclusive, which stipulates that Friedlander was to receive one-fourth of the crops raised on the land as rent therefor; that he should furnish Sims a mule with which to cultivate the land, a set of tools and farming implements as might be necessary for the same purpose; and that, if Sims "shall have fully complied with all the terms of this lease, and shall have carried out in full all of his dues and obligations, then at the expiration of this lease the tenant shall become the absolute owner of the mule and farming implements so loaned to tenant; but if he fails in the performance of his obligations hereunder, he shall forfeit all of the rights in the same manner as in any other contract, and the landlord shall have the right at his option to cancel these agreements, with or without written notice." One of the mules and the disc harrow are claimed by Sims under this contract.

In the early part of 1931, the following written agreement was entered into between the parties:

"J. T. Sims hereby agrees to do work on the creeks and branches, of the Friedlander place, to prevent the overflow of land under normal conditions, as outlined by J. T. Sims to S. Friedlander and S. J. Sullivan whilst in Memphis April 18th, J. T. Sims to furnish all labor and material.

"In addition to above J. T. Sims is to pay two hundred dollars in cash for rental of land for 1931, now being

cultivated by him on said place and estimated to be one hundred (100) acres or less.

"This lease not to affect lease now in existence for 1932-1933."

Sims, according to the evidence for Friedlander, failed to pay the rent stipulated in this second agreement, but was permitted to cultivate the land in 1932 under the original agreement. In September, 1932, Friedlander exercised the option of terminating the contract, declared the lease at an end because of Sims' failure to pay the rent for 1931, and ordered Sims off the land, which order he obeyed, taking with him the mule and a disc harrow, which, he says, were furnished him under the contract.

The court below excluded the agreement covering the rent to be paid by Sims in 1931, and instructed the jury to return a verdict for Sims for the possession of the mule furnished him under the original contract, which was expressly kept in force by the agreement of 1931 for the years 1932-1933. There was a conflict in the evidence as to whether the harrow had been furnished Sims under this agreement, Friedlander's evidence being to the effect that it was for the use of all the tenants on the place, and not for the use of any one of them exclusively. This conflict in the evidence was resolved by the jury in favor of Friedlander.

The agreement for 1931 should not have been excluded, for it did not wholly displace the original lease contract, but modified it only in so far as its terms were in conflict therewith. Rest., Contracts, sec. 408; 13 C. J. 603; 3 Elliott on Contracts, 10; Hammon on Contracts, 851. If Sims failed to pay the rent for the year 1931, Friedlander had the right, at his option, to terminate the contract.

The contract, if such there was, under which Sims claims the other mule, arose in this way: Friedlander leased a portion of his place in 1929 to Epperson by a written lease, the terms of which were substantially the same as the lease from him to Sims. This lease was af-

terwards canceled, and Epperson left the premises. Sullivan, an agent of Friedlander, turned the land over to Sims under an agreement that he would take possession of an farm it in accordance with the agreement with Epperson. Sims was also permitted by Sullivan to take possession of and work a mule that had been supplied to Epperson under his contract. Sims worked the land only one year under this agreement, but was not permitted by Friedlander thereafter so to do. This mule procured under the Epperson contract is the second of the two mules hereinbefore mentioned, and Sims' claim to this mule is based on what his counsel calls an assignment to him of the Epperson contract. The evidence disclosed no such assignment from Epperson, but only, construed most strongly for Sims, that he entered into possession of the land under a verbal agreement with an agent of Friedlander to work the land on the terms and conditions that appear in the Epperson contract, which covered a period of more than one year.

Several questions here arise; but one, which must necessarily be decided adversely to Sims, is that the evidence does not disclose that Sullivan had any real or apparent authority to make this contract. The only authority he had, as disclosed by the evidence, was to supervise the farming of the place and to collect the rents from the tenants thereon. He may have had some authority to bind Friedlander as to what the tenants should do in carrying out their contracts, as to which we are not called on here to express an opinion. Sullivan's agreement with 'Sims was not known to Friedlander, and there is no evidence to warrant the ratification thereof by him. The court below, therefore, committed no error in directing the jury to return a verdict for Friedlander for this mule. The verdict and judgment are correct as to the disc harrow and the Epperson mule, and to that extent will not be here disturbed, but must be reversed as to the other

mule because of the error relative thereto hereinbefore set forth, and the case remanded for trial on that issue.

So ordered.